**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NUMBER: 9:25-CV-80965 | JUDGE DONALD M. MIDDLEBROOKS**

TRUSTMARK LIFE INSURANCE
COMPANY,

                Plaintiff,

      v.

BRETT GORMAN ET AL.,

                Defendants.

<u>**INTERPLEADER PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT**
**MARC KOMORSKY'S EXPEDITED MOTION FOR LEAVE TO AMEND**</u>

Interpleader Plaintiff Trustmark Life Insurance Company ("Trustmark") files this Opposition to Defendant Marc Komorsky's Expedited Motion for Leave to Amend ("Motion to Amend"). (D.E. 38). The Motion to Amend—filed almost four months after the Court's deadline and after this Court already found once Defendant Komorsky "lacked good cause to extend the deadline"—should be denied because:

- **Komorsky (again) fails to establish good cause or due diligence**: This Court denied Komorsky's same request less than a month ago (presented as a motion to extend the amendment deadline), and there is no legitimate basis to revisit the Court's unequivocal ruling that Komorsky has <u>not</u> "shown diligence or good cause to amend the pleadings." Furthermore, Komorsky's purported newly discovered grounds for a counterclaim are not new at all: the facts he relies upon were pled in Trustmark's complaint and it is undisputed Komorsky himself knew these facts. Even setting these points aside, Komorsky failed to comply with the Court's amendment deadline; failed to timely pursue discovery; and failed to seek Court intervention before the amendment deadline expired, which precludes him from belatedly amending his pleadings now.

- **Amendment would be futile because Komorsky's proposed Counterclaim fails as a matter of law**. *First*, Komorsky's proposed Counterclaim is improper because the commencement of an interpleader does not give rise to a counterclaim against the stakeholder for not having paid the funds to a counterclaim defendant without the benefit of court adjudication. *Second*, Komorsky's proposed claim for breach of fiduciary duty fails because a life insurance company owes no fiduciary duty to its insured, much less a beneficiary of the policy.

- **Amendment would prejudice Trustmark and cause delay in trial proceedings.** Permitting Komorsky to bring a new claim against Trustmark at this late stage would require additional discovery and an extension of the remaining deadlines and trial date.

I.     <u>RELEVANT FACTS:</u>

Trustmark, a disinterested stakeholder, filed this interpleader action on August 1, 2025, seeking the Court's determination of the rightful beneficiary of the proceeds of a life insurance policy (the "Policy") issued to decedent Cory Gorman ("Decedent").[1] (D.E. 13, ¶ 40). Komorsky first appeared on September 17, 2025 (D.E. 9) and filed his Answer and Affirmative Defenses on September 23, 2025. (D.E. 10). Trustmark subsequently amended its interpleader Complaint on September 26, 2025 (D.E. 13), and Komorsky answered that complaint. (D.E. 14).

---

[1] In the Complaints, Trustmark also requested this Court determine the proper beneficiary of the Critical Care Insurance Policy in addition to the Policy. However, to date, no benefits are payable under the Critical Illness and Cancer Coverage Protection Insurance Policy (the "Critical Illness Policy") because the preconditions to payment have not been satisfied. The Policy and Critical Illness Policy are hereinafter referred to collectively as the "Policies".

Although Komorsky's Motion to Amend asserts that he was unaware of facts purportedly supporting his proposed counterclaim against Trustmark, these assertions are unfounded because Trustmark's initial Complaint and First Amended Interpleader Complaint pled these facts:

> 26.     On June 24, 2025, Trustmark had a telephone conversation with Brett Gorman's retained counsel wherein the counsel inquired about beneficiary information for the Policies.  During this call, Trustmark disclosed the beneficiary policy information pertaining to the Policies.
>
> 27.     On June 25, 2025, Trustmark had a telephone conversation with Marc Komorsky advising of the disclosure of Marc Komorsky's information as the beneficiary under the Policies and subsequent harassment Marc Komorsky was receiving from Brett Gorman regarding the Policies.

*See* Compl., D.E. 1, ¶ 26-27; First Am. Compl., D.E. 13, ¶ 26-27. In fact, Komorsky answered Trustmark's amended complaint on October 6, 2025 and "**[a]dmits the allegations contained in paragraph 27**"—that Trustmark had a phone call with him *before this action was filed* where they discussed Trustmark's disclosure of Komorsky as the beneficiary of the policies. (D.E. 14, ¶ 27).

Trustmark's pleadings and exhibits (filed well before the amendment deadline) also make clear the facts and circumstances surrounding the beneficiary designation forms at issue, which provide the basis for Trustmark's Interpleader:

- During Decedent's lifetime, on February 29, 2024, Trustmark received a Beneficiary Designation Form containing the apparent signature of Decedent, which designated Komorsky as the sole primary beneficiary on the Policies. *See* D.E. 13 (Trustmark's Fist Amended Interpleader Complaint), ¶ 18, Ex. H.

- On June 2, 2025, the Decedent passed away. *See id*. at ¶ 19, Ex. I.

- On June 11, 2025, Trustmark received a completed Death Benefit Claim Form from Komorsky seeking benefits from the Life Insurance Policy. *See id*. at ¶ 21, Ex. J.

- On July 2, 2025, Brett Gorman (the Personal Representative of Decedent's Estate), through his counsel, sent Trustmark a letter requesting information on the beneficiary changes to the Policies. The letter indicated that Brett Gorman found two Change-of-Beneficiary Forms for the Policies—both dated February 29, 2024—with one electing Komorsky as the sole beneficiary, and the other electing Komorsky and Sandra Gorman as co-primary beneficiaries. The letter further states that the conflicting forms "has

caused confusion and could result in the filing of a lawsuit." *See id*. at ¶ 29-31, Ex. N.

- Trustmark has yet to process the claims or remit the Policies' benefits due to the conflicting Change of Beneficiary Forms brought to its attention by Brett Gorman. *See id*. at 13, ¶ 32.

- The complete terms of Decedent's insurance policies at issue, including the terms related to beneficiary designations, are contained within the insurance policies attached to Trustmark's initial complaint and First Amended Interpleader Complaint. *See id*. at ¶ 11, 14, 15, Exs. B, D. E.

On October 28, 2025, this Court entered a Scheduling Order setting the following relevant deadlines and warning that "[t]he parties shall adhere to the following schedule, which shall not be modified absent compelling circumstances," (D.E. 25):

| Event | Deadline |
|---|---|
| Discovery Plan shall be filed. | Nov. 10, 2025 |
| Joinder of Additional Parties and Amend Pleadings | Nov. 26, 2025 |
| All discovery shall be completed | March 19, 2026 |
| All Pretrial Motions, including summary judgment motions and *Daubert* motions, and motions *in limine* shall be filed | April 2, 2026 |
| Calendar call | May 27, 2026 |
| Trial | June 1, 2026 |

.       On November 17, 2025, the Parties filed a Joint Discovery Plan wherein they agreed to follow the above deadlines, including the deadline "to join other parties and to amend pleadings (which is November 26, 2025)." (D.E. 26, p. 3). Even though Komorsky was already aware of the very facts and allegations he now proffers to assert a belated counterclaim, he advised the Court in this November 2025 filing that pleading amendments were unnecessary:

> **E.  The necessity or desirability of amendments to the pleadings**
>
> The Parties do not believe amendments to the pleadings are necessary but reserve the right to amend the pleadings by November 26, 2025, pursuant to this Court's October 28, 2025, Pretrial Scheduling Order (DE 25).

(D.E. 26, p. 4).

Although Komorsky served a corporate representative deposition notice on Trustmark on October 13, 2025 (D.E. 38-2), the 27 topics identified were overly broad and irrelevant to the sole

3

claim pled in the interpleader—the proper beneficiary for the Policies. For example, Komorsky sought broad information surrounding topics such as Trustmark's internal policies and procedures for handling claims and paying benefits, which were irrelevant to the claims *actually* at issue in this action. Due to scheduling conflicts and the need to prepare a corporate representative on a multitude of topics, the deposition was not set to occur until February 24, 2026. On February 10, 2026, Komorsky served an amended deposition notice on Trustmark which added another topic, for a total of 28 topics. (D.E. 39-5).

Notwithstanding the court-ordered deadlines, Komorsky never sought relief of those deadlines with the Court and never mentioned any issue with the scheduling order deadlines until January 8, 2026—long after the deadline had passed. (D.E. 31, p. 4). What's more, Komorsky never served written discovery on *any* party or non-party until over two months after the deadline to amend had expired. On January 29, 2026, Komorsky served Trustmark with a request for documents and a week later, on February 6, 2026, Komorsky served Trustmark with a second request for documents and a request for inspection. (D.E. 39-2, 39-3, 39-4). Trustmark timely responded to the discovery requests.

Because Komorsky waited until 26 and 18 days, respectively, prior to the scheduled deposition to serve multiple broad and irrelevant discovery requests on Trustmark, and Trustmark required the full 30 days allowed under the Federal Rules to respond to the requests and produce responsive documents, the deposition of Trustmark's corporate representative was moved to March 10, 2026 to enable Trustmark to produce documents responsive to the written discovery before its corporate representative deposition.

On the same day Komorsky first served written discovery, January 29, 2026, Komorsky filed a motion to extend the (already expired) deadline to amend pleadings. (D.E. 27). Komorsky requested the Court extend the November 26, 2025 deadline to amend pleadings until one week after the deposition of Trustmark's corporate representative because "[a]ny amendment would be based on the testimony of Trustmark." (*Id*. at 2). This Court rightfully denied Komorsky's motion to extend the amendment deadline because he failed to show diligence or good cause:

> Even if the delay in securing the deposition was not attributable to Komorsky, the question is whether the missed amendment deadline was outside his reasonable control. Komorsky did not move to compel the deposition, and did not alert the Court to any scheduling concerns until well after the deadline had passed. Trustmark notes that the first mention of any scheduling order deadline occurred on January 8, 2026. (DE 31 at 4). The motion itself was filed two months after the

4

deadline.

On this record, I cannot conclude that Komorsky has shown diligence or good cause to amend the pleadings. While he timely noticed the deposition, he did not pursue alternative discovery methods or seek Court intervention before the deadline expired. *See MidAmerica C2L Inc. v. Siemens Energy Inc.*, No. 20-11266, 2023 WL 2733512, at *14 (11th Cir. Mar. 31, 2023) (taking "too long to conduct discovery" is not due diligence.). The motion to extend the amendment deadline is denied.

(D.E. 37 at 3).

Trustmark's corporate representative was deposed on March 10, 2026, and Komorsky filed the Motion to Amend on March 13, 2026, seeking a second bite at the same apple to amend his pleadings. (D.E. 38 at 6). For the reasons discussed below, the Motion to Amend should be denied.

## II.   ARGUMENT

### A. Komorsky has not and still cannot establish good cause for obtaining leave to amend to assert a counterclaim after this Court's deadline.

The deadline to amend pleadings expired on November 26, 2025, almost four months ago. (*See* D.E. 25, ¶ 10). Even though this Court already denied Komorsky's motion to extend the expired pleading amendment deadline because he failed to show "diligence or good cause to amend the pleadings," Komorsky now seeks the same relief, under the guise that he now has good cause to amend his pleadings based on purportedly "new" information revealed in the deposition of Trustmark's corporate representative. However, just as this Court already found, Komorsky has not, and cannot, show good cause to belatedly amend the pleadings.

"[W]here a party's motion to amend is filed after the deadline for such motions, as delineated in the court's scheduling order, the party must show good cause why leave to amend [the pleading] should be granted." *Engual v. Total Card, Inc.*, 2020 WL 13358552, at *1 (S.D. Fla, 2020) (Middlebrooks, J.) (quoting *Smith v. Sch. Bd. Of Orange Cty.*, 487 F.3d 1361, 1366 (11th Cir. 2007)). Good cause exists when "evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline passed." *Donahay v. Palm Beach Tours & Transp., Inc.*, 243 F.R.D. 697, 699 (S.D. Fla. 2007) (citation omitted). "A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry." *Engual*, 2020 WL 13358552, at *1 (internal citations omitted).

"The following three factors are relevant in determining whether a plaintiff has been diligent: '(1) [whether] the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery period; (2) [whether] the information supporting the

5

proposed amendment was available to the plaintiff; and (3) [whether] even after acquiring information, the plaintiff delayed in asking for amendment.' *Rahal v. Mussel Beach Restaurant Inc.*, 2018 WL 1470838, at *2 (S.D. Fla. 2018) (Middlebrooks, J.) (internal citation omitted) (denying motion for leave to amend after the court's deadline because plaintiff failed to demonstrate she was diligent in seeking the evidence upon which her proposed amended complaint was to be based).[2]

### 1. This Court has already found that Komorsky failed to establish good cause to amend pleadings under Federal Rule of Civil Procedure 16(b).

Komorsky's Motion to Amend is nothing more than his attempt to recast the same arguments this Court already rejected. Relying on Federal Rule 16(b)(4), Komorsky argues in his Motion to Amend that good cause exists to extend the amendment pleading deadline, (D.E. 27, p. 8). But this Court previously held that Komorsky has not "shown diligence or good cause to amend the pleadings" under the same Rule 16(b)(4). (D.E. 37, p. 3) ("On this record, I cannot conclude that Komorsky has shown diligence or good cause to amend the pleadings."). And the Court reached this conclusion after noting that Komorsky did not move to compel the deposition, did not alert the Court to any scheduling concerns until well after the deadline had passed, did not file the motion to extend until two months after the deadline had passed, did not pursue alternative discovery methods, and did not seek Court intervention before the deadline expired. *Id*. at 2-3. "A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry." *Engual*, 2020 WL 13358552, at *1 (internal citations omitted).

The record before this Court is the same and thus commands the same result—that

---

[2] The Motion to Amend cites to the "excusable neglect" standard of Fed. R. Civ. P 6(b), which the Eleventh Circuit has held is not the proper standard when a motion to amend is filed after a scheduling order deadline. *Sosa v. Airprint Systems, Inc.*, 133 F. 3d 1417, 1418 (11th Cir. 1998). But even if the excusable neglect standard applied here, the result would be the same given Komorsky's failure to show diligence or good cause by not amending his pleadings before the deadline where he knew (or should have known) of the facts he now relies on, by not pursuing alternative discovery methods, and by not seeking Court intervention before the deadline expired. *See id*. ("However, even if we assume, arguendo, that excusable neglect under Rule 6(b) were the proper standard, we would affirm the district court's decision in this case. Given the length of Sosa's delay and the fact that it was within her control to name Viking Industries as a defendant well in advance of the scheduling order's deadline, the district court was authorized to conclude that Sosa's neglect was not excusable."). And in any event, Plaintiff's cite to *Hurley v. Anderson* helps Trustmark, not Komorsky, where the *Hurley* court found no excusable neglect on the part of a Plaintiff who failed to timely file an amended pleading due to their attorneys' error. 2017 WL 4304894, at *2 (S.D. Fla. 2017). Komorsky has failed to establish good cause or excusable neglect.

Komorsky has shown neither diligence nor good cause to permit him to amend the pleadings under Rule 16(b)(4). Komorsky regurgitates his arguments from the Motion to Extend, again arguing that the delay in scheduling Trustmark's deposition creates good cause to amend the pleadings. (D.E. 38). But this argument has already been rejected by the Court, and he has not alleged new facts that justify his delay in seeking to amend the pleadings until months after the November 26, 2025 deadline. (D.E. 37 at 3) (quoting *MidAmerica C2L Inc.*, 2023 WL 2733512, at *14 ("Taking 'too long to conduct discovery' is not due diligence."). This Court's previous finding of Komorsky's lack of diligence ends the good cause inquiry.

### 2. The Purported Newly Discovered Evidence Relied upon by Komorsky was Pled in Trustmark's Complaints and Exhibits and Otherwise Known to Komorsky Long Before the Trustmark Deposition.

In his Motion to Amend, Komorsky claims that he "learned for the first time that he had a counterclaim for breach of fiduciary duty against Trustmark based on its testimonial admissions previously unknown to Komorsky." (D.E. 38, p. 5). According to Komorsky, "[p]rior to [certain] disclosures in depositions this week, Komorsky did not have a basis for bringing a counterclaim against Trustmark for breach of fiduciary duty." *Id*. at 2. But Komorsky's failure to read Trustmark's complaints and exhibits is a far cry from good cause and diligence. A review of Trustmark's pleadings makes clear that the facts Komorsky puts before this Court as supposedly new "bombshell testimony" supporting his proposed counterclaim against Trustmark for breach of fiduciary duty[3] were known to Komorsky at the inception of this action, if not before, and in any event provide no basis for such a claim against Trustmark.

Although the Motion to Amend lists six statements Komorsky purportedly learned for the first time during Trustmark's deposition (D.E. 38, p. 5), his proposed counterclaim for breach of fiduciary duty attached to the Motion to Amend rests entirely on two theories:

> **49.     Trustmark breached that duty when it disclosed Komorsky's identity to a third party, Brett Gorman, who Trustmark had actual knowledge was attempting to learn the identity of the beneficiary.**

* * *

> **52.     Trustmark has unreasonably withheld payment of the Policies to Komorsky and further unreasonably commenced this Interpleader litigation against Komorsky.**

---

[3] Trustmark disputes that a counterclaim for breach of fiduciary duty could be brought against Trustmark at any time, as discussed below.

7

(D.E. 38-1, pp. 11-12). It is beyond dispute that the facts surrounding each of these points was pled in Trustmark's initial and amended complaints, and Komorsky himself was aware that Trustmark had disclosed his name to Brett Gorman's counsel before this Interpleader was filed.

Turning specifically to the first theory raised by Komorsky in his proposed counterclaim—that Trustmark disclosed his identity to Brett Gorman's counsel—Trustmark's pleadings specifically allege these facts:

> 26.    On June 24, 2025, Trustmark had a telephone conversation with Brett Gorman's retained counsel wherein the counsel inquired about beneficiary information for the Policies. During this call, Trustmark disclosed the beneficiary policy information pertaining to the Policies.
>
> 27.    On June 25, 2025, Trustmark had a telephone conversation with Marc Komorsky advising of the disclosure of Marc Komorsky's information as the beneficiary under the Policies and subsequent harassment Marc Komorsky was receiving from Brett Gorman regarding the Policies.

Compl., D.E. 1 ¶ 26-27; First Am. Compl., D.E. 13 ¶ 26-27. And in his Answer, Komorsky admits to the call with Trustmark described in Paragraph 27. (See D.E. 14 ¶ 27). Moreover, Komorsky produced a recorded telephone call with Brett Gorman from June 25, 2025 wherein Brett tells Komorsky that Trustmark disclosed to Brett's lawyer that Komorsky was the beneficiary. *See* **Exhibit A**, Recorded Phone Call at 1:32-1:38 (tangible evidence will be sent to the Court via flash drive)(Komorsky "So what made you think I was the beneficiary?" Brett "That's what [Trustmark] told my lawyer this morning with me there."). Thus, any testimony by Trustmark's corporate representative about this disclosure are plainly not new facts learned for the first time in the deposition, as Komorsky urges this Court to believe.[4]

---

[4] Notably, Komorsky's counterclaim alleges that Trustmark owed a fiduciary duty to Komorsky as a beneficiary of the Policies. Although Trustmark disputes a fiduciary relationship exists, as discussed below, the fact of Komorsky being identified as a beneficiary is certainly not new information. To the extent Komorsky attempts to argue that the alleged violation of Trustmark policies and procedures supports his breach of fiduciary duty claim, Komorsky not only mischaracterizes Trustmark's testimony, but Florida law makes clear that a purported violation of internal policies does not give rise to such a duty on the part of Trustmark. *See Discount Tire Co.*

With regard to the second theory raised by Komorsky in the Motion to Amend—that Trustmark has unreasonably withheld payment of the Policies to Komorsky and further unreasonably commenced this Interpleader against Komorsky—a reading of Trustmark's pleadings and exhibits makes the factual basis for Trustmark's interpleader known:

- During Decedent's lifetime, on February 29, 2024, Trustmark received a Beneficiary Designation Form containing the apparent signature of Decedent, which designated Komorsky as the sole primary beneficiary on the Policies. *See* D.E. 13, ¶ 18, Ex. H.

- On June 2, 2025, the Decedent passed away. *See* D.E. 13, ¶ 19, Ex. I.

- On June 11, 2025, Trustmark received a completed Death Benefit Claim Form from Komorsky seeking benefits from the Life Insurance Policy. *See* D.E. 13, ¶ 21, Ex. J.

- On July 2, 2025, Brett Gorman (the Personal Representative of Decedent's Estate), through his counsel, sent Trustmark a letter requesting information on the beneficiary changes of the Policies. The letter indicated that Brett Gorman found two Change of Beneficiary Forms, both dated February 29, 2024, with one electing Komorsky as the sole beneficiary, and the other electing Komorsky and Sandra Gorman as co-primary beneficiaries. The letter further states that the conflicting forms "has caused confusion and could result in the filing of a lawsuit." *See* D.E. 13, ¶ 29-31, Ex. N.

- Trustmark has yet to process the claims or remit the Policies' benefits due to the conflicting Change of Beneficiary Forms brought to its attention by Brett Gorman. *See* D.E. 13, ¶ 32.

- The complete terms of Decedent's insurance policies at issue, including the terms related to beneficiary designations and the validity and acceptance of beneficiary designations, are contained within the insurance policies attached to Trustmark's initial complaint and First Amended Interpleader Complaint. *See* D.E. 13, ¶ 11, 14, 15, Exs. B, D, E.

Trustmark's complaints and Komorsky's own answers make clear that Komorsky: knew the status of the beneficiary forms received by Trustmark and when they were received; knew the precise terms of the insurance policies, including the acceptance of beneficiary designations during the lifetime of the Decedent; knew of Trustmark's disclosure of Komorsky's status as beneficiary to Gorman's counsel; and knew that Trustmark did not remit payment to Komorsky, at least as early as Trustmark's initial Interpleader Complaint and, in reality, well before Trustmark filed the Interpleader Complaint. Thus, Komorsky's assertion that he "learned for the first time" in deposition that Trustmark does not pay benefits unless a beneficiary change is made during the insured's lifetime –demonstrates only that Komorsky failed to actually read the insurance policies

---

*v. Bradford*, 373 So.3d 399, 401 (Fla.App. 5 Dist., 2023) ("Florida law is clear that a defendant's internal policies, alone, do not create or define the duty owed to a plaintiff.").

9

at issue, which are attached to Trustmark's complaints filed in August and September 2025. *See* D.E. 13, Ex. B ("**Change of Owner or Beneficiary**. You may change the Owner or the Beneficiary at any time during the lifetime of the Insured. . .").

It is clear that neither of the two theories set forth in Komorsky's proposed Counterclaim constitute new evidence justifying a belated pleading. And even though his proposed counterclaim relies only on these two theories, <u>none</u> of the six points cited in the Motion to Amend involve facts learned for the first time in Trustmark's deposition or facts that can plausibly support his purported theories of liability against Trustmark:

| Komorsky's Purported "New Evidence" | Why This Evidence Does Not Support Komorsky's Motion to Amend |
|---|---|
| 1. The only beneficiary identified in Trustmark's files at the time of Cory's death was Komorsky. | **This is not newly discovered evidence. Trustmark pled these facts in its First Amended Complaint.** *See* bulleted points *supra,* pp. 8-9. |
| 2. Trustmark's metadata confirmed that Cory emailed the Komorsky beneficiary designation to Trustmark. | **It is not newly discovered evidence that Trustmark received the Komorsky beneficiary designation from what appeared to be Cory Gorman. The metadata only confirms the email address from which the Komorsky beneficiary designation was sent to Trustmark and the type of phone used to take a photo of the Komorsky beneficiary designation. Trustmark's First Amended Complaint pleads that the beneficiary designation form in Trustmark's file was signed by decedent, Cory Gorman.** *See* bulleted points *supra,* pp. 8-9. <br><br> **The metadata of the email confirming that Trustmark received the Komorsky beneficiary designation from an email address of mrcoryg@aol.com does nothing to establish a claim against Trustmark.** <br><br> **To the contrary, the metadata of the photographed beneficiary designation form underscores the need for Trustmark to have filed an Interpleader.** The metadata indicates the photograph was taken by an iPhone 13 Pro Max; however, co-defendant Brett Gorman, the personal representative of Cory Gorman's estate, contends that Cory Gorman never possessed an iPhone 13 Pro Max. Therefore, Brett Gorman contends the metadata is evidence the photographed beneficiary designation form was not taken by Cory Gorman and thus, so says Brett Gorman, calls into question the validity of the beneficiary designation form. |

10

| Komorsky's Purported "New Evidence" | Why This Evidence Does Not Support Komorsky's Motion to Amend |
|---|---|
| 3. On March 1, 2024, Trustmark mailed Cory a letter confirming he changed his beneficiary to 100% Komorsky. | **This is not newly discovered evidence. Trustmark pled these facts in its First Amended Complaint.** *See* bulleted points *supra,* pp. 8-9.<br><br>**Specifically, Trustmark's First Amended Complaint pleads that the beneficiary designation form in Trustmark's file was signed by decedent, Cory Gorman.** *See id*.<br><br>**This fact does nothing to establish a claim against Trustmark.** |
| 4. Trustmark disclosed in a recorded phone call with Brett's counsel that Komorsky was the sole beneficiary of the two insurance policies despite Trustmark's procedure, process, and duty to never disclose the identity of a beneficiary to anyone other than the beneficiary. | **This is not newly discovered evidence. Trustmark pled these facts in its First Amended Complaint.** *See* bulleted points *supra,* pp. 8-9.<br><br>**In fact, Komorsky knew these facts prior to the filing of this Interpleader action, as referenced in Trustmark's First Amended Complaint.** *See* bulleted points *supra,* pp. 8-9.<br><br>**Komorsky not only "[a]dmit[ted] the allegations contained in paragraph 27,"** D.E. 14 ¶ 27, but produced a recorded telephone call between he and Brett Gorman from June 25, 2025 wherein Brett Gorman tells Komorsky that Trustmark disclosed to Brett's counsel that Komorsky was the beneficiary. **Ex. A** (tangible flash drive). |
| 5. Trustmark did not receive Brett's beneficiary form during Cory's lifetime. | **This is not newly discovered evidence. Trustmark pled these facts in its First Amended Complaint.** *See* bulleted points *supra,* pp. 8-9. |
| 6. Trustmark does not pay benefits to a beneficiary who was not identified to Trustmark during the insured's lifetime. | **This is not newly discovered evidence. This is a term of the Policies, both of said policies were attached as exhibits to Trustmark's First Amended Complaint.** *See* bulleted points *supra,* pp. 8-9. |

Notwithstanding that Komorsky's proposed breach of fiduciary duty claim is improper as a matter of law (regardless of when filed), it is clear he has been in possession of the facts and allegations surrounding his proposed counterclaim since October 6, 2025 *at the latest*, when Komorsky filed his Answer to Trustmark's amended complaint. Komorsky simply cannot show good cause to amend when he was already in possession of the very evidence he proffers to support his purported counterclaim. *See Benton as next friend of Benton v. Carnival Corporation*, 2021

11

WL 3429345, at *2 (S.D. Fla. 2021) (denying plaintiff's motion to amend to allege punitive damages after the amendment deadline because "while Plaintiff may have recently obtained evidence to support or ultimately prove a claim for punitive damages, Plaintiff has been in possession of the facts and allegations necessary to assert such a claim since November 20, 2020, when Plaintiff filed her Amended Complaint.")

Komorsky's reliance on *American General Life Ins. Co. v. Schoenthal Family, LLC*, 2007 WL 1752471 at *2 (N.D. Ga. 2007), is misplaced. The *Schoenthal* court granted leave to amend pleadings based on its finding "that Defendants pursued discovery in a sufficiently diligent manner" and despite these efforts, the defendant had insufficient information to assert a bad faith claim until late in the discovery period. *Id*. at *2. These findings are the exact opposite of the case at hand where (1) this Court already found that Komorsky has not shown diligence or good cause in conducting discovery, and (2) Komorsky has been in possession of the facts and circumstances necessary to assert a purported breach of fiduciary duty claim well before the deadline expired. (D.E. 37, p. 3) (citing *MidAmerica C2L Inc.*, 2023 WL 2733512, at *14 (taking "too long to conduct discovery" is not due diligence.)).

At bottom, Komorsky cannot manufacture purportedly new evidence and his Motion to Amend is nothing more than an attempt to reargue the Motion to Extend that this Court previously denied. Because the evidence he relies upon was pled by Trustmark and already known to Komorsky long before the deadline expired, Komorsky's Motion to Amend must be denied.

**B. Komorsky's Motion for Leave to Amend Should Be Denied Because Amendment Would Be Futile.**

"[A] district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Amer.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[D]enial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal." *Id.* at 1263 (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999)); *see e.g., Fernandez v. Colombo*, 2020 WL 1166731 at *1 (S.D. Fla. 2020). Komorsky's proposed counterclaim for breach of fiduciary duty is futile because (1) it is impermissible to bring a counterclaim in an interpleader; (2) Trustmark does not owe a fiduciary duty to Komorsky as a matter of law; and (3) Trustmark, as interpleader plaintiff, cannot be held liable for bringing an interpleader action.

12

**1. It is impermissible to bring a counterclaim in an interpleader action.**

Komorsky's proposed counterclaim seeks to impose liability on Trustmark for not choosing him, and remitting payment, as the beneficiary under the policies—the exact issue Trustmark has laid at this Court's feet for determination. (*See generally* D.E. 13; D.E. 38-1 at 12 ("Trustmark has unreasonably withheld payment of the Policies to Komorsky and further unreasonably commenced this Interpleader litigation against Komorsky."); *see also* D.E. 38-1 at 12 (seeking "an award in favor of Komorsky and against Trustmark of damages in an amount to be determined at trial but not less than $350,000, which includes payment in full of Cory Gorman's Life Insurance and Critical Care Insurance Policies, plus Komorsky's attorneys' fees in connection with Trustmark's Interpleader action, plus interest.").[5]

Permitting defendants in an interpleader "to carry forward with counterclaims against the stakeholder based upon the same interpleaded funds" would cause the "very purpose of the interpleader action" to be "utterly defeated." *Lincoln Benefit Life Co. v. Finnigan*, 2012 WL 13019083 at *2 (S.D. Fla. 2012) (citing *Metropolitan Life Ins. Co. v. Barretto*, 178 F. Supp. 2d 745, 748 (S.D. Tex. 2001). Interpleader defendants "are barred from asserting counterclaims that duplicate their claims in the underlying interpleader." *Am. Gen. Life Ins. Co. v. Collum*, 2021 WL 1788650, at *3 (M.D. Fla. 2021) (granting insurer's motion to dismiss counterclaim by claimant); *Genworth Life Ins. Co. v. Sehorne*, 2008 U.S. Dist. LEXIS 30369, at *10 (M.D. Fla.  2008) ("determining that if interpleader defendants were allowed to counterclaim against the stakeholder, the purpose of the interpleader action 'would be utterly defeated'"); *Metro. Life Ins. Co. v. Carter,* 2005 WL 2810699, at *12 (M.D. Fla. 2005) (granting judgment on counterclaim in favor of insurer, the Court stated "[Claimants] have not cited to any authority supporting the proposition that the proper commencement of an interpleader action may in itself give rise to a counterclaim against the stakeholder for failing, instead, to have paid the moneys out to the counterclaiming defendant without benefit of court adjudication of conflicting claims among defendants."); *Harris Corp. v. Dunn*, 2006 WL 2691541, at *11 (M.D. Fla. 2006) ("Counterclaims are disfavored in interpleader actions, when the interpleader action is deemed maintainable"); *Metro. Life Ins. Co.*, 2005 WL 2810699, at *12 (M.D. Fla. 2005) ("Courts have consistently rejected such counterclaims where, as here, the plaintiff was entitled to pursue interpleader relief.").

---

[5] Notably, as Trustmark has repeatedly indicated, no benefits are currently due under the Critical Care Insurance Policy because the preconditions for payment have yet to be satisfied.

Here, Trustmark sought this Court's guidance on the proper beneficiary of the Policies because it was presented with competing claims to the benefits under each policy which put Trustmark in a position of being subject to multiple liabilities had it paid benefits to either interpleader defendant.  With regard to the Critical Illness Policy, even though that policy has a "Facility of Payment" provision that details to whom benefits are to be paid if due (which was not Komorsky), Komorsky submitted a claim for benefits under that policy causing an obvious conflict. (D.E. 13, Ex. D at p. 20; D.E. 13, Ex. K)

But more importantly, with regard to the Life Insurance Policy, even though Komorsky was the designated beneficiary at the time of Cory Gorman's death, according to Trustmark's records, Trustmark then received conflicting information which called into question the veracity of the beneficiary designation. (D.E. 13 ¶¶ 18, 30; D.E. 13, Exs. H, N). Indeed, Trustmark received an executed beneficiary designation form from counsel for Brett Gorman, the duly appointed Personal Representative of Cory Gorman's Estate, which was dated the same date as the form designating Komorsky as sole beneficiary—February 29, 2024. (D.E. 13, ¶ 30; D.E. 13, Ex. N). The beneficiary designation form listed Komorsky *and* Sandra Gorman as beneficiaries, not just Komorsky. (*Id.*). Although the beneficiary designation form naming Komorsky and Sandra Gorman was received from counsel for the Personal Representative of Decedent's Estate after his death, the fact that the beneficiary designation form was dated the same date as the beneficiary designation form received by Trustmark during the lifetime of Cory Gorman called into question the beneficiary designation previously received. (D.E. 13, ¶¶ 30—31, 33; D.E. 13, Ex. N).  Both designation forms appeared to be dated the same date, both designation forms appeared to be signed by Cory Gorman and both forms designated different beneficiaries. (D.E. 13, Ex. N). Additionally, counsel for Brett Gorman threatened that litigation could result based on the conflicting beneficiary designation forms executed by Cory Gorman and dated February 29, 2024. (D.E. 13, Ex. N).  Thus, by providing the alternative designation form and threatening legal action, the Personal Representative of the Estate created the need for Trustmark to file the Interpleader.

Trustmark was presented with conflicting claims not only on the Critical Illness Policy but also on the Policy creating potential multiple liability for Trustmark. Interpleader is appropriate when the stakeholder may be subject to adverse claims that could expose it to multiple liability. *Primerica Life Ins. Co. v. Rudolph*, 2019 WL 7762116, at *2 (S.D. Fla. 2019) (citing *Ohio Nat'l Life Assurance Corp. v. Langkau*, 353 Fed.Appx. 244, 248 (11th Cir. 2009).  In an interpleader,

"adverse claims need not be formal, and the stakeholder need not judge the merits of the claims." *Primerica Life Ins. Co. v. Rudolph*, 2019 WL 7762116, at *2 (S.D. Fla. 2019) (quoting *Ohio Nat'l. Life Assurance Corp. v. Langkau*, 2006 WL 3162354, at *2 (M.D. Fla. 2006). "[A] stakeholder need only 'demonstrate that he has been or may be subjected to adverse claims.' … It is enough that the claims *could* bring about multiple liability." *Id.* (quoting *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974)) (emphasis in original). Trustmark was entitled to, and did properly, pursue interpleader relief with regard to the Policies.

**And in fact, Komorsky and Brett Gorman have maintained competing claims, up to this day**. (*Compare* D.E. 38 at 8; D.E. 38-1 at 11—12 (Komorsky claiming Trustmark's Interpleader is "frivolous" and unreasonable[6]), *with* D.E. 19, ¶ 37, and affirmative defenses I-IV (Brett Gorman "contest[ing] the legal sufficiency and enforceability of the Benefit Claims Forms submitted for consideration by Marc Komorsky."). Yet Komorsky's alleged counterclaim seeks to hold Trustmark liable for not having paid the benefits to Komorsky, despite Brett Gorman's competing claim, without the benefit of court adjudication of conflicting claims among the potential claimants. In light of their completing claims, Komorsky's position is meritless.

An interpleader plaintiff cannot be held liable for bringing an interpleader action. *Prudential Ins. Co. of America v. Hovis*, 553 F.3d 258, 266 (3rd Cir. 2009) (concluding that interpleader plaintiff's bringing of an interpleader action "protected it not only from further liability to the claimants for the amount owed under the life insurance policy, but also from liability arising out of its decision to settle the ownership controversy by way of interpleader."); *see also Genworth Life Ins. Co. v. Thompson-Ceasar*, 2024 WL 4499309, at *1 (S.D. Fla. 2024) ("Interpleader jurisprudence does not require the plaintiff to establish the validity of the competing claims, only that the plaintiff has 'a real and reasonable fear of double liability or vexatious, conflicting claims against the single fund ... regardless of the merits of the competing claims.'"

---

[6] Komorsky claims that the interpleader action was frivolous because, in part, "Komorsky obviously knew at all times he did not forge any document….", a fact that is not for Trustmark to decide in light of the competing claims. (D.E. 38 at 7). In essence, Komorsky seeks to chastise Trustmark for not choosing him and for filing this Interpleader instead. Such actions by Trustmark are not a breach of a legal duty. *Great-West Life & Annuity Ins. Co. v. Dye*, 2012 WL 13140714, at *4 (M.D. Fla. 2012) ("[W]here a stakeholder is allowed to bring an interpleader action, rather than choosing between adverse claimants, its failure to choose between the adverse claimants (rather than bringing an interpleader action) cannot itself be a breach of a legal duty.") (brackets in original) (quoting *Prudential Ins. Co. of Amer. V. Hovis*, 553 F.3d 258, 265 (3rd Cir. 2009)).

(internal quotations omitted) (quoting *Alan L. Frank L. Assocs. P.C. v. OOO RM Inv.*, 2016 WL 9383606, at *6 (S.D. Fla. 2016). "Interpleader is appropriate where the stakeholder may be subject to adverse claims that could expose it to multiple liability on the same fund." *Ohio Nat'l Life Assurance Corp. v. Langkau*, 353 Fed. Appx. 244, 249 (11th Cir. 2009) at 248 (quoting *Dunbar v. United States*, 502 F.2d 506, 511 (5th Cir. 1974)). "Interpleader is designed to protect stakeholders from harassment in the face of multiple claims against the same fund, and to relieve the stakeholder from assessing which claim, among many, has merit." *Orseck, P.A. v. Servicios Legales De Mesoamerica S. De R.L.*, 699 F. Supp. 2d 1344, 1348 (S.D. Fla. 2010) (citing *State Farm Fire & Casualty v. Tashire*, 386 U.S. 523, 534 (1967)). Allowing Komorsky to proceed with a counterclaim against Trustmark would defeat the purpose of the interpleader itself. For these reasons, Komorsky's Motion to Amend should be denied.

**2. Trustmark does not owe a fiduciary duty to Komorsky as a matter of law.**

Komorsky's proposed counterclaim alleges that Trustmark purportedly breached a fiduciary duty to Komorsky by disclosing Komorsky's status as beneficiary to counsel for the Personal Representative of the Estate.  (D.E. 38-1 at 11) ("Trustmark owed Komorsky a fiduciary duty as the beneficiary of decedent Cory Gorman's life insurance and critical care policies. Trustmark breached that duty when it disclosed Komorsky's identity to a third party, Brett Gorman, who Trustmark had actual knowledge was attempting to learn the identity of the beneficiary."). Any such claim is not viable, however, because Trustmark does not owe Komorsky, as a potential beneficiary or claimant to the Policies, any fiduciary duty. *Moody v. Physicians Mutual Ins. Co.*, 789 Fed. Appx. 777, 782—83 (11th Cir. 2019) (finding that a beneficiary of a life insurance policy cannot establish a fiduciary relationship with the insurance company because there is no "fiduciary relationship 'between insurance companies … and their customers in the context of the purchase of casualty, health, or life insurance and attempts to collect under those policies.'" (quoting *Sayer v. Lincoln Nat. Life Ins. Co.*, 2006 WL 6253201, at *6 (N.D. Ala. 2006)); *American General Life and Acc. Ins. Co. v. Ward*, 509 F.Supp.2d 1324, 1331 (N.D. Ga. 2007) ("[A] life insurance company owes no fiduciary duty to [] the intended beneficiaries of a contract for insurance" in sister states either) (citing *State Farm Fire & Cas. Co. v. Fordham*, 148 Ga. App. 48, 51 (Ga. Ct. App. 1978)).

It is axiomatic that if there is no fiduciary relationship between an insurer and an insured under Florida law, *Hogan v. Provident Life and Acc. Ins. Co.*, *665 F.Supp.2d 1273*, 1286 (M.D.

Fla. 2009) (citing *Time Ins. Co., Inc. v. Burger*, 712 So.2d 389, 391 (Fla. 1998)), no such relationship would extend to a potential beneficiary of a policy, either. *See American General Life and Acc. Ins. Co. v. Ward*, 509 F.Supp.2d 1324, 1331 (N.D. Ga. 2007) (finding that an insurer owes no fiduciary duty to an intended beneficiary of an insurance contract based on findings that an insurer does not owe a beneficiary duty to an insured). The nonexistence of a fiduciary relationship is a fatal flaw of Komorsky's proposed counterclaim. Komorsky's reliance on *Gerardi v. Aetna Life Ins. Co.*, 2017 WL 1555972 (S.D. Fla. 2017) to support his proposed counterclaim against Trustmark is misplaced because, *inter alia*, *Gerardi* involves a claim against an ERISA Plan Administrator, which Trustmark is not, based on ERISA law, and the case is otherwise wholly distinguishable from the instant action.[7]

Moreover, Komorsky cannot baldly claim that a fiduciary relationship exists where one does exist not as a matter of Florida law. And to the extent Komorsky attempts to argue that the alleged violation of Trustmark policies supports his breach of fiduciary duty claim, Florida law makes clear that a purported violation of internal policies does not give rise to a duty, or define the duty owed, on the part of Trustmark. *See Discount Tire Co. v. Bradford*, 373 So.3d 399, 401 (Fla. 5th DCA 2023) ("Florida law is clear that a defendant's internal policies, alone, do not create or define the duty owed to a plaintiff."). Moreover, contrary to Komorsky's argument, the Trustmark witness never testified that disclosure of the beneficiary information was a violation of any Trustmark internal policy or procedure. Rather, the Trustmark witness testified that disclosing Komorsky's beneficiary designation was outside of it *normal* procedure, but not a violation of a specific Trustmark policy and procedure.[8] (*See e.g.* D.E. 38-4 at 21:8—10) ("[W]e do our best to only disclose information a life insurance policy to a beneficiary listed on that policy"); *Id.* at 97:8—17 ("Q But that disclosure was a violation of company procedures, wasn't it? … THE WITNESS: It was inconsistent with our normal process").

---

[7] To be sure, in *Gerardi*, the plaintiff asserted a breach of fiduciary duty claim against an ERISA Plan Administrator alleging that the Plan Administrator owed a duty of loyalty to the Plan beneficiary which, unlike Trustmark which is merely the issuer of the Policies and not a Plan Administrator. *Id.* at *3. Moreover, the crux of the issue in *Gerardi* was the denial of a claim, which has no application here where no claim has been denied. *See id.* at *1.

[8] The Trustmark witness did indicate that Trustmark will typically communicate with the personal representative of an estate and at times may disclose beneficiary information, as was done here when Gorman's counsel called on behalf of the personal representative of the estate. (*Id.* at 99:6—22); (D.E. 13, Exhibit L).

17

For each of these reasons, Komorsky's proposed counterclaim against Trustmark is improper.

**C. Granting Komorsky's Motion for Leave to Amend would cause a delay the case schedule and trial proceedings and Trustmark would be prejudiced without an extension of the deadlines.**

Komorsky claims there will be no prejudice to Trustmark if leave to amend is granted because "Komorsky and Trustmark do not require any additional discovery with respect to Komorsky's counterclaim. Komorsky's deposition is not taking place until March 24, 2026." (D.E. 38 at FN 3).  Komorsky also states that "[a]s Komorsky has already taken Trustmark's deposition and Trustmark's document production is completed, the amendment would not require any additional discovery and would not affect the trial date scheduled for June 1, 2026." (D.E. 38 at 8).  This is patently false.  While Trustmark may have produced documents in response to Komorsky's discovery requests served in late January and early February, Trustmark was litigating this lawsuit as an interpleader plaintiff against whom no affirmative claims were pending.  As such, Trustmark had no reason to conduct discovery related to either liability or alleged damages for a breach of fiduciary duty claim.

But in order to properly defend against any proposed counterclaim, Trustmark would need an opportunity to conduct discovery against each interpleader defendant in order to avoid being prejudiced in its defense.  Unlike Komorsky who sat idly for months while the deadlines expired without exercising diligence in pursuit of purported counterclaims he now seeks to assert, Trustmark could not have forecasted discovery it may have needed until such time as any affirmative claim is asserted against Trustmark.  Trustmark will not have had an opportunity to conduct offensive written discovery related to purported breach of fiduciary duty claims nor take the deposition of Komorsky related to breach of fiduciary duty claims. If the Court were to permit this belated counterclaim, to allow sufficient time for Trustmark to conduct discovery, the deadline for discovery would need to be extended beyond the current April 2, 2026, deadline.  (D.E. 37 at 3). Failure to provide sufficient time for discovery would unduly prejudice Trustmark.

Furthermore, Trustmark would require additional time after discovery to file dispositive motions given the unsupported legal and factual basis for Komorsky's purported breach of fiduciary claim against Trustmark. This Court has already stated that extending the pretrial/dispositive motions deadline "would leave insufficient time for full briefing, and resolution of dispositive motions before trial. Maintaining the existing motions deadline is necessary to preserve the orderly progression of the case and avoid disruption to the trial calendar." (*Id.*)  To

allow for full and fair discovery of the proposed counterclaim, and to retain sufficient time for dispositive motion briefing, the dispositive motions deadline of April 2, 2026, must be extended, which, in turn, will require extension of the pretrial deadline and trial date.  Because Komorsky's belated Motion to Amend would cause unnecessary delay, would upset the orderly progression of the case, and would disrupt to the trial calendar, the Motion to Amend must be denied.

### III.    CONCLUSION

For the foregoing reasons, Komorsky's motion for leave to amend should be denied.

Date: March 23, 2026                    Respectfully submitted,

/s/ *Traci McKee*
Traci McKee
Fla. Bar No. 53088
Faegre Drinker Biddle & Reath, LLP
1500 Jackson Street, Suite 201
Ft. Myers, Florida 33901
(239) 286-6910
Traci.McKee@faegredrinker.com

Mason Medeiros (*Pro Hac Vice*)
Faegre Drinker Biddle & Reath, LLP
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, Minnesota 55402
(612) 766-7352
mason.medeiros@faegredrinker.com

*Attorneys for Trustmark Life Insurance Company*

19