UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PLAM BEACH DIVISION

TRUSTMARK LIFE INSURANCE COMPANY,
        Plaintiff,                                Case No. 9:25-cv-80965-DMM

        v.

BRETT GORMAN, MARC KOMORSKY,
AND DOES 1-10,

        Defendants.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF MARC KOMORSKY'S MOTION FOR SUMMARY JUDGMENT AND ATTORNEYS' FEES**

Defendant Marc Komorsky moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. This interpleader arises from a transparent effort by Defendant Brett Gorman ("Brett") to divert life insurance proceeds from their rightful recipient, Defendant Marc Komorsky ("Marc"), after Trustmark negligently disclosed Marc's identity as the beneficiary to Brett.

On March 5, 2023, the insured Cory Gorman ("Cory") texted his cousin Marc Komorsky ("Marc") that he had a blowout fight with his brother, Brett Gorman ("Brett"). SMF ¶ 6-7[1]. Cory texted Marc, "Brett told me to die then said I was dead to him therefore you are my only loving brother. I need to make a new change on my life insurance and who gets what." *Id.* Eleven months later, on February 29, 2024, Cory did exactly what he said he would do. He executed a Beneficiary Designation Form naming Marc as his sole 100% primary beneficiary, transmitted it to Trustmark from his personal email account (mrcoryg@aol.com) via his iPhone 13 Pro Max, and texted Marc a photograph of the signed form the following evening. SMF ¶ 9-13. Trustmark received,

_____

[1] Defendant's Statement of Material Facts was filed at Docket Entry 51.

processed, and recorded the designation the next day. SMF ¶ 16-18. Trustmark mailed Cory a letter confirming his change of beneficiary had been processed. *Id.* Trustmark's own Senior Director of Claims confirmed under oath: "Mr. Komorsky was 100 percent beneficiary." SMF ¶ 18. Also on March 1, 2024, Cory texted Marc an image of the signed beneficiary form he emailed to Trustmark that designated Marc as the sole beneficiary. SMF ¶ 19-20.

Despite Trustmark's internal policies, and straightforward warranties and representations to Marc that Trustmark would not disclose Marc's identity as beneficiary of Cory's policies to Brett, Trustmark disclosed Marc's identity to Brett on a recorded call on June 16, 2025. SMF, ¶ 25, 29-30. Trustmark's disclosure prompted Brett to act. After learning Marc was the sole beneficiary, Brett then claimed to have found a competing form (the "Gorman Form") naming Marc and Brett's mother, Sandra, as 50/50 co-beneficiaries in Cory's closet — a form Trustmark never received during Cory's lifetime. SMF ¶ 31-34. Brett then destroyed Cory's cell phone, computer, and safe while admittedly aware of the beneficiary dispute, and hired a handwriting expert to claim the Marc-Only Form was forged. SMF ¶ 39-45. Critically, Brett destroyed Cory's cell phone after he unlocked it, viewed and sent text message from it as late as June 30, 2025. SMF ¶ 40.

However, Brett's scheme was nonsensical because under the insurance policy that Trustmark issued Cory, if any beneficiary predeceases the insured, that interest passes to the remaining beneficiary. SMF ¶ 4. Brett's mother, Sandra, predeceased Cory. SMF ¶ 37. Accordingly, even under Brett's "competing" Gorman Form, Marc is still the sole beneficiary. Nonetheless, Trustmark commenced this interpleader action contending there was some kind of dispute even though under both forms at issue, Marc is the sole beneficiary.

This action never should have been filed. Marc is the only beneficiary for three reasons: (1) Marc is the sole beneficiary under the Marc-only Form that was received, processed and confirmed by Trustmark (SMF ¶ 9-18); (2) Marc is the sole beneficiary under the Gorman Form (SMF ¶ 4, 37); and (3) Trustmark did not receive the Gorman Form until after Cory's death (SMF ¶ 35), and the life policies issued by Trustmark to Cory state a change of beneficiary must be made during the insured's lifetime. SMF ¶ 3, 5. Under every conceivable legal scenario — whether the Marc-Only Form controls, whether the Gorman Form is credited arguendo — Marc Komorsky is entitled to the proceeds. The motion should be granted.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the factual context renders respondents' claim implausible—if the claim is one that simply makes no [ ] sense—[the non-moving party] must come forward with more persuasive evidence to support their claim than would otherwise be necessary".

"Courts are not required to accept implausible version of facts on summary judgment." *Desia v. GE Life & Annuity Assur. Co.*, 2008 WL 4724080 (D.Conn. 2008) (citing *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005). "Where other record evidence so squarely contradicts  a plaintiff's story as to render it implausible on its face, summary judgment is appropriate." *Byrne v. Goodwill South Florida TEP, LLC*, 2025 WL 1872021 (S.D. Fla 2025). "By

3

the same token, if the factual context render the claim implausible – if the claim is one that make no [ ] sense – the parties offering the opinion must come forward with more persuasive evidence to support their claim than would otherwise be necessary. *Medical Assur. Co., Inc. v. Miller*, 779 F.Supp.2d 902 (citing *Mid–State Fertilizer Co. v. Exch. Nat'l Bank of Chicago,* 877 F.2d 1333, 1339 (7th Cir.1989) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). See *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## ARGUMENT

### I. THE GORMAN FORM IS A NULLITY UNDER THE EXPRESS TERMS OF THE POLICIES, AND SUMMARY JUDGMENT IS WARRANTED ON THIS GROUND ALONE.

The threshold — and independently dispositive — argument requires only that this Court enforce the plain language of the insurance contract.

The Policies expressly provide: "You may change the Owner or the Beneficiary at any time during the lifetime of the Insured… To do so, send a written request to Our home office in a form acceptable to Us. **The change will go into effect when We have recorded the change.**" SMF ¶ 3. The Trustmark Beneficiary Designation Form confirms: "Such change will only be binding on the Company when received at its home office and approved by the Company." SMF ¶ 5.

The Gorman Form was never sent to Trustmark's home office. SMF ¶ 34-36. It was never received by Trustmark. *Id.* It was never recorded. *Id.* It was never approved. *Id.* Trustmark's own Senior Director of Claims confirmed under oath that Trustmark did not even receive the Gorman Form until July 2, 2025 — a month after Cory Gorman's death. SMF ¶ 24, 35. Schattner further

4

testified that Trustmark was unaware of ever having paid benefits to a beneficiary identified only on a form received after the insured's death. SMF ¶ 36.

The Gorman Form is legally inoperative as a matter of contract. Under Florida law, insurance policies must be enforced in accordance with their plain language. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). Florida law requires strict compliance with the terms of an insurance policy. *Warren v. Prudential Ins. Co. of Am.,* 138 Fla. 443, 189 So. 412 (1939). Case law under analogous policies is uniform: an unsubmitted or unrecorded beneficiary designation has no effect. *Id.* (change of beneficiary void where it was not received by insurer); *Sheppard v. Crowley*, 61 Fla. 735, 55 So. 841 (1911) (change of beneficiary form void where insured died before beneficiary form was recorded by insurer). This ground alone entitles Marc Komorsky to summary judgment.

## II. TRUSTMARK'S OWN RECORDS AND SWORN TESTIMONY ESTABLISH THAT CORY GORMAN VALIDLY DESIGNATED MARC KOMORSKY AS THE SOLE BENEFICIARY.

### A. The Marc-Only Form Was Received, Processed, and Recorded by Trustmark.

Trustmark's business records reflect that the Marc-Only Form was received from Cory Gorman's personal email account, mrcoryg@aol.com, on February 29, 2024. SMF, ¶ 10. The metadata reflects "sent from my iPhone" and identifies the transmitting device as Cory's iPhone 13 Pro Max. SMF ¶ 11-12. Trustmark processed the designation on March 1, 2024, issued a written confirmation that "Marc Komorsky is the primary beneficiary under Certificate JT1158," and updated its records accordingly. SMF, ¶ 15-17. Schattner's sworn testimony is unambiguous: "Based on the records that we received, and what you are showing me, Mr. Komorsky was 100 percent beneficiary." SMF ¶ 18.

These records constitute admissible evidence under Federal Rule of Evidence 803(6) (business records) and 901(b)(9) (authentication of electronic records). *See Parkcrest Builders, LLC v. Housing Authority of New Orleans*, 2017 WL 6559870 (E.D. La 2017) (email recipient's testimony, context and content of email, and signature block or nicknames used in an email are sufficient to authenticate email) (citing *United States v. Siddiqui*, 235 F.3d 1318 (11th Cir. 2000).

***B. The Metadata Is Corroborated by Independent Evidence of Cory's Device, Habits, and Intent.***

The metadata identifying Cory's iPhone 13 Pro Max as the transmitting device is corroborated by Marc's text message records: in September 2021, Cory told Marc his present intention to purchase an iPhone 13 Pro Max. SMF ¶ 13; Fed R. Evid. 803(3). By 2023, Cory had an iPhone as confirmed in the message "Sent from my iPhone" that appeared in Cory's email to Marc. Exh. D, ¶ 2 at Exh. 1-2. And Brett Gorman himself emailed mrcoryg@aol.com as recently as November 26, 2024, confirming the account was Cory's active, known email address, even to Brett. SMF ¶ 22.

On the evening of March 1, 2024 — the day Trustmark recorded the Marc-Only designation — Cory texted Marc the same photograph of the signed Marc-Only Form that Cory emailed to Trustmark. The message metadata confirms the sender as Cory Gorman (561-313-5000) and the recipient as Marc Komorsky (914-490-5015). SMF ¶ 19-21. Cory's action in texting Marc after Trustmark's processing reflects his awareness that the designation was complete and his deliberate choice to inform his chosen beneficiary. The photo of the Marc-only form that Cory sent to Marc is the same photo Cory emailed to Trustmark. SMF ¶ 19. Plainly, that photo of the signed Marc-Only Form was on the camera roll of Cory's iPhone but **Brett threw out Cory's iPhone to destroy this evidence.** SMF ¶ 39-45.

The corroboration does not stop there. The March 5, 2023 "major blowout" text — in which Cory told Marc, almost a year in advance, "I need to make a new change on my life insurance and who gets what" — provides direct, contemporaneous evidence of Cory's intent. SMF ¶ 6-7. So does the Trustmark's recorded call with Cory where Cory requested a change of beneficiary form and stated "I'm just going to give to my cousin." SMF ¶ 8. The electronic record, the authenticated device ownership, Brett's own corroborating use of that email, and Cory's pre-existing stated intent all point in one direction: Marc Komorsky is the lawful beneficiary.

### C. Email Transmission by the Insured Is Expressly Acceptable to Trustmark.

Schattner confirmed that transmitting a photograph of a completed beneficiary designation form via email from the insured's own account is acceptable to Trustmark. SMF ¶ 14 ("Yes, it is."). Cory's submission was received, accepted, and processed in accordance with Trustmark's own standards. SMF ¶ 11-17.  Under the terms of the policy, Marc is the beneficiary.

### III. DEFENDANTS' HANDWRITING EXPERT CANNOT OVERCOME THE ELECTRONIC RECORD AND DOES NOT CREATE A GENUINE DISPUTE OF MATERIAL FACT.

### A. The Forgery Theory Is Categorically Refuted by Authenticated Electronic Metadata.

In discovery, Brett retained a handwriting expert to opine that the Marc-Only Form was forged. However, this "opinion" requires this Court to accept a compounded implausibility: that an unknown third party forged Cory Gorman's signature on the Marc-Only Form, and then gained unauthorized access to Cory's personal AOL account and transmitted the forged document from Cory's personal iPhone 13 Pro Max. After Trustmark received the "forged" Marc-only form it provided a confirm letter to Cory and Cory never contested it, and most incredibly, Cory kept the "forged" Marc-only form in his closet where Brett found it (after Cory's death) next to the real

form that named Marc and Sandra as beneficiaries. SMF ¶ 10-20, 26. Even more fantastical, is that under Brett's forgery theory, the forger included Marc as beneficiary when Marc would have been a named beneficiary under the Gorman-only Form anyway.

There is not a shred of evidence supporting this scenario. This is not a reasonable inference. *Matsushita*, 475 U.S. at 587. An opinion on ink and paper cannot nullify authenticated digital records showing the insured transmitted the document himself from his own device and kept the original in his closet. Brett's spoliation of Cory's iPhone and computer requires that the expert's opinion be disregarded – Brett cannot be permitted to knowingly throw out dispositive evidence of authenticity (Cory's iPhone's camera roll) and then retain an expert to opine the document is forged.[2]

## IV. BRETT GORMAN'S INTENTIONAL SPOLIATION OF EVIDENCE WARRANTS AN ADVERSE INFERENCE THAT SUPPORTS SUMMARY JUDGMENT.

### A. Brett Gorman Spoliated Material Evidence After the Dispute Was Known.

A party has a duty to preserve evidence when litigation is pending or reasonably foreseeable. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005). "Potential sanctions for spoliation of evidence include dismissal of the case, exclusion of expert testimony, or a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Wynmoor Community Council, Inc. v. QBE Insurance Corporation*, 2012 WL 12837287 (S.D. Fla 2012) (citing *Flury v. Daimiler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005); Fed. R. Civ. P. 37(e); *Skanska USA Civil Southeast Inc. v. Bagelheads, Inc.*, 75 F.4th 1290 (11th Cir. 2023)

---

[2] Komorsky is simultaneously filing a motion in limine to exclude Brett's handwriting expert's on multiple grounds.

(sanctions affirmed where court "found a lack of any cogent explanation for [plaintiff's] failure to preserve the destroyed cell phones").

After Brett unlocked Cory's iPhone and reviewed text messages on it, Brett destroyed it along with Cory's computer, and a locked safe — all while admittedly aware of the beneficiary dispute.[3] When asked: "Knowing that there was an issue regarding the beneficiary, you just tossed, threw out Cory's phone and Cory's computer?" Brett answered without qualification: "Yes." SMF ¶ 41-45. Brett destroyed the phone some time after June 30, 2025, two days before his lawyer sent Trustmark a letter that stated the dispute "could result in the filing of a lawsuit." SMF ¶ 46.

The destroyed evidence was plainly material. Cory's cell phone contained his communications, including the text thread in which Cory told Marc about changing his life insurance in March 2023, and the same text thread in which Cory sent Marc the signed Marc-Only Form on March 1, 2024. SMF ¶ 19-20. Cory's computer would have contained outgoing email records confirming the transmission to Trustmark. SMF ¶ 11. The locked safe — destroyed unopened — may have contained insurance documents or notes reflecting Cory's intent. Of course, only Brett knows what other damaging communications were contained on Cory's iPhone (including messages between Cory and Brett) before brought Brett decided to throw it out. SMF ¶ 45.

### B. Brett's Conduct Demonstrates Bad Faith.

Brett did not negligently discard these items. He intentionally destroyed evidence. SMF ¶ 45. He first unlocked Cory's cell phone, accessed Cory's text messages, and then discarded it. SMF ¶ 39-46. This sequence — access, review, destroy — is strong circumstantial evidence of

---

[3] Brett went so far as to send texts *from Cory's phone* weeks after he died. SMF ¶ 40.

intentional suppression. *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (discussing *Stanton v. Nat'l R.R. Passenger Corp.*, 849 F.Supp.1524 (M.D. Ala. 1994); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir. 2009). Brett's awareness of the dispute establishes the requisite bad faith motive.

### C. The Adverse Inference Supports Summary Judgment.

Where intentional spoliation is established, courts may draw an adverse inference that the destroyed evidence would have been unfavorable to the spoliating party. *Flury*, 427 F.3d at 945. Drawing that inference here, the destroyed phone and computer would have confirmed Cory's intent to designate Marc as his sole beneficiary — consistent with the March 2023 text, the March 1, 2024 text, and Trustmark's own records. This inference, layered on the authenticated evidence, leaves no genuine issue for trial.

## V. MARC KOMORSKY IS THE LAWFUL BENEFICIARY UNDER ANY CONCEIVABLE LEGAL SCENARIO.

Beyond the independently dispositive grounds set forth above, this case presents a structural legal certainty that merits independent consideration: there is no scenario under which Marc Komorsky loses and Brett Gorman prevails on a coherent legal theory. The analysis proceeds through three scenarios.

### A. Scenario One: The Marc-Only Form Is Valid. Marc Receives 100%.

For the reasons set forth above, the Marc-Only Form is the operative beneficiary designation. Trustmark received, recorded, and confirmed it on March 1, 2024. Marc Komorsky was "100 percent beneficiary" by Trustmark's own account. SMF ¶ 18. This is the correct legal conclusion. Marc receives the full proceeds.

***B. Scenario Two: The Gorman Form Is Given Effect. Marc Still Receives 100%.***

Even assuming — contrary to the policy's plain terms, the weight of authority, and Trustmark's own testimony — that the Gorman Form were somehow enforceable, Marc Komorsky still receives 100% of the proceeds. The Gorman Form designates Marc Komorsky (50%) and Sandra Gorman (50%) as co-primary beneficiaries. Sandra Gorman died in January 2025, five months before Cory Gorman's death on June 2, 2025. SMF ¶ 37.  Under the terms of the policy, Sandra cannot receive any insurance proceeds because she predeceased the insured. SMF ¶ 4.

The Trustmark Beneficiary Designation Form — the same form used for the Gorman designation — expressly provides: "If multiple parties are designated as beneficiaries and there are no instructions, proceeds will be paid equally or to the survivors." SMF ¶ 5. Under this survivorship clause, Sandra's lapsed 50% interest passes to the surviving primary beneficiary — Marc Komorsky — who thereby receives 100% even under the Gorman Form.

Brett Gorman is not named as a beneficiary on either the Marc-Only Form or the Gorman Form. He has no direct beneficial interest under either 2024 designation. Even in Scenario Two, the proceeds go to Marc, not to Brett.

## VI. THE TOTALITY OF THE UNDISPUTED EVIDENCE ENTITLES MARC KOMORSKY TO JUDGMENT AS A MATTER OF LAW.

The case for summary judgment rests on six converging, mutually reinforcing grounds: (1) the Gorman Form is a legal nullity under the Policies' express recording requirement; (2) Cory Gorman personally transmitted the Marc-Only Form from his own email account, on his own iPhone 13 Pro Max, using his habitual "Sent from my iPhone" signature — all confirmed by Trustmark's Senior Director of Claims under oath; (3) Cory texted Marc the signed form the same evening Trustmark processed it, with authenticated MMS metadata confirming the sender and

recipient; (4) Cory stated his intent to change his life insurance a full year before the designation, directly linking Brett's hostility to the Marc-Only Form; (5) Brett intentionally destroyed Cory's phone, computer, and safe with admitted knowledge of the dispute, warranting an adverse inference; and (6) under every conceivable legal scenario — including those most favorable to Brett — Marc Komorsky is the lawful recipient of the proceeds.

Against this record, Brett Gorman has produced no admissible evidence sufficient to permit a reasonable jury to find in his favor. Summary judgment is appropriate and should be granted.

## VII. MARC KOMORSKY IS ENTITLED TO ATTORNEYS' FEES AND COSTS AGAINST TRUSTMARK and BRETT GORMAN.

Trustmark filed this interpleader against a man, Marc Komorsky, whose cousin had just died, forced him to litigate and incur attorneys' fees, and did so while its own Senior Director of Claims knew — and would later testify under oath — that "Mr. Komorsky was 100 percent beneficiary." SMF ¶ 18. Worse, this entire dispute is the result of Trustmark's negligent disclosure of Marc's identity as beneficiary under the Policies *after* Trustmark was notified of Brett's attempts to learn his identity and a security question was put in place by Trustmark to avoid disclosure. SMF ¶ 25, 27, 29, 30. That conduct warrants an award of fees and costs under both the Court's equitable discretion in interpleader actions and its inherent power.

### A. The Court Has Equitable Discretion to Award Fees Against an Unjustified Interpleader Stakeholder.

Where the interpleader was "improvident, vexatious, or otherwise improper," fees are appropriate. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976) (binding in this Circuit). *See also Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982) ("Costs . . . should not be assessed against a stakeholder, at least where the stakeholder has not been dilatory or otherwise guilty of bad faith.").

12

The leading case on point is *John Hancock Mut. Life Ins. Co. v. Beardslee*, 216 F.2d 457 (7th Cir. 1954). There, the Seventh Circuit affirmed an award of attorneys' fees and interest against an insurer that filed an interpleader when the named beneficiary was clearly entitled to the proceeds — holding the insurer's delay and resort to litigation was "vexatious and unreasonable." The court reasoned that where one claimant's position lacked sufficient substance to warrant interpleader, the insurer had no justification for refusing to pay and shifting its costs onto the rightful beneficiary. *Id.* Other courts are in accord: "An unsupported claim for the proceeds of a policy does not justify invoking the interpleader statute." *Transamerica Fin. Life Ins. Co. v. Smith*, No. 5:08-cv-298, 2009 WL 10689830, at *2 (E.D.N.C. 2009). "[T]here is no doubt but that an asserted adverse claim may be so wanting in substance that interpleader may not be justified." *Viewhaven, Inc. v. Danon*, No. 85 Civ. 4069, 1986 WL 6779, at *3 (S.D.N.Y. 1986) (citing *New York Life Ins. Co. v. Lee*, 232 F.2d 811, 813 (9th Cir. 1956)).

The claims presented in this case could not bring about multiple liability because both resulted in the same payee – Marc Komorsky. The predicate for interpleader — adverse claims that could produce multiple liability — was absent as a matter of law for numerous reasons: (1) Trustmark received the Marc-Only Form on February 29, 2024 and processed it the next day; (2) Trustmark issued a written confirmation that "Marc Komorsky is the primary beneficiary under Certificate JT1158"; (3) Trustmark's policy is "to only disclose information on a life insurance policy to a beneficiary listed on that policy"; and (4) Trustmark was unaware of ever having paid benefits to a beneficiary based on a form received after the insured's death. SMF ¶ 25, 27, 36. In short, Trustmark's own policies, its own records, and its own witness all directed payment to Marc Komorsky. Despite this, Trustmark filed suit and forced Marc to retain counsel and litigate the entitlement that Trustmark itself had already confirmed.

13

Moreover, this entire dispute is the result of Trustmark's negligent conduct in disclosing Marc's identity as beneficiary to Brett. Trustmark was put on notice by Marc that Brett would try desperately to learn the identity of the beneficiary of the policies and Trustmark assured Marc that Trustmark would never disclose his identity. SMF ¶ 30. Trustmark set up a password to verify that any caller, even one impersonating Marc, was actually Marc. *Id.* Trustmark assured Marc that not even a lawyer would be able to obtain his identity. *Id.* ([Marc:] "If a lawyer calls, could a lawyer find out? [Trustmark:] No, no, no, sir.") However, Trustmark ignored it own practices, policies and procedures and willfully disclose Marc's identity to Brett's attorney causing the exact scenario that Marc feared – harassment by Brett including this frivolous lawsuit. SMF ¶ 29. But for Trustmark disclosure of Marc's identity as beneficiary to Brett, this dispute would never have arisen and Marc would have been paid the benefits under the policies.

**D. Fees Are Also Warranted Under the Court's Inherent Power.**

Independent of its interpleader equitable discretion, this Court possesses inherent power to sanction conduct that abuses the judicial process. *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006). Attorneys' fees may be awarded "when [a party] has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Byrne v. Nezhat*, 261 F.3d 1075, 1106, 1121 (11th Cir. 2001). A party acts in bad faith when it knowingly pursues a claim — or initiates litigation — that lacks legal and factual foundation. *Id.* Trustmark's decision to file this interpleader, after its own Director of Claims confirmed Marc was "100 percent beneficiary" and after its own records showed the Gorman Form arrived only after Cory's death and Marc was still the sole beneficiary even under that form (as a result of Sandra predeceasing Cory), satisfies that standard.

14

Marc Komorsky respectfully requests that this Court award him his reasonable attorneys' fees and costs incurred in this action, assessed against Trustmark, as a sanction under the Court's inherent power.

## CONCLUSION

For the foregoing reasons, Defendant Marc Komorsky respectfully requests that this Court: (1) grant his Motion for Summary Judgment; (2) enter judgment declaring Marc Komorsky the sole lawful beneficiary of Trustmark Life Insurance Certificate Nos. JT1158 and JZ6338; (3) direct Trustmark to disburse the full proceeds of both Policies to Marc Komorsky; and (4) award Marc Komorsky his costs and such other and further relief as this Court deems just and proper.

Respectfully Submitted,

THE LETO LAW FIRM
By: */s/ Matthew P. Leto*
Matthew P. Leto
Florida Bar No. 104504
mleto@letolawfirm.com
2875 N.E. 191st Street
Suite 604
Aventura, FL 33180
T: (305) 341-3155

THE ROTH LAW FIRM, PLLC
By: *Richard Roth*
Richard A. Roth.
rich@rrothlaw.com
295 Madison Ave., Fl. 22
New York, NY 10017
T: (212) 542-8882
*Counsel for Defendant Marc Komorsky*

15

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 1, 2026, a true and correct copy of the forgoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via CM/ECF.

/s/ Matthew P. Leto
MATTHEW P. LETO