**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 25-CV-80965-MIDDLEBROOKS

TRUSTMARK LIFE INSURANCE COMPANY,

     Plaintiff,

v.

BRETT GORMAN, et al.,

     Defendants.

_____/

**<u>OMNIBUS ORDER</u>**

THIS CAUSE is before the Court upon Defendant Marc Komorsky's Motion for Summary Judgment (DE 52); Defendant Marc Komorsky's Motion in Limine to Exclude Groman Form (DE 53); Defendant Marc Komorsky's Motion in Limine to Exclude Norwitch (DE 54) and Plaintiff's Renewed Motion for Interpleader Plaintiff's Discharge, Dismissal, Injunction and Reasonable Attorney's Fees and Costs (DE 64).  The motions are fully briefed (DE 61, 62, 70, 71, 73, 76) and include supplemental briefing (DE 79, 80, 81).

I.     <u>Background</u>

The material facts, as culled from pleadings, deposition testimony, affidavits, declarations, exhibits, and taken in the light most favorable to Plaintiff, the non-moving party, for purposes of summary judgment, are as follows.

Decedent Cory Gorman ("Cory") held a life insurance policy and a critical illness policy issued by Interpleader Plaintiff Trustmark Life Insurance Company ("Trustmark"). On February 29, 2024, Trustmark received a beneficiary designation form transmitted from Cory's email address naming his cousin, Defendant Marc Komorsky, ("Marc") as the 100% primary beneficiary.

Trustmark's corporate representative testified that the form was received on that date, and Trustmark processed and recorded the change on March 1, 2024. Trustmark issued written confirmation reflecting Marc as the sole beneficiary, and Trustmark's senior director testified that "Mr. Komorsky was 100 percent beneficiary" as of March 2024.

A second form dated February 29, 2024 (hereinafter, "second form") naming Marc and Cory's mother, Sandra Gorman, as co-beneficiaries, was not received during Cory's lifetime. Trustmark's corporate representative testified that Trustmark first received this form on July 2, 2025—one month after Cory's death—and that Trustmark had no knowledge of ever paying out benefits based on a form received post-death. Sandra Gorman predeceased Cory in January 2025, and the policy provides that a predeceased beneficiary's interest passes to surviving beneficiaries.

Before Cory's death, Trustmark disclosed Marc's beneficiary status to Brett Gorman's ("Brett") counsel. Brett is Cory's brother. Trustmark's corporate representative testified that such disclosure was inconsistent with Trustmark's normal practice and that Trustmark "normally" does not disclose beneficiary information. In fact, Marc had notified Trustmark that Brett would be calling Trustmark to try to obtain the identity of the beneficiary and Trustmark represented to Marc that they would not disclose his identity.

Cory died on June 2, 2025, and Marc submitted a claim for benefits on June 11, 2025. On July 2, 2025, Brett's counsel sent Trustmark a letter stating that Brett had located two beneficiary forms, asking Trustmark to confirm whether both forms had been received, stating that the paperwork has caused confusion and could result in litigation. Trustmark's corporate representative testified that these forms were routed to the legal department and were never part of the actual claim file until their legal department brought it to the claim department's attention.

2

Trustmark's corporate representative further testified that Trustmark did not receive the second form during Cory's lifetime and that Trustmark's concerns about paying benefits to Marc were triggered only when Trustmark received the second form post-death.

On April 15, 2026, Brett filed a Notice of Withdrawal of Claims, abandoning any claim to the proceeds. (DE 60.) Trustmark agrees to deposit the full proceeds of both policies into the court registry. (DE 64, DE 74). Only one claimant remains: Marc Komorsky.

Marc moves for summary judgment, asserting that he is the sole lawful beneficiary because Trustmark received and recorded his beneficiary designation during Cory's lifetime and no competing claim remains. Marc also seeks attorneys' fees, arguing that Trustmark's handling of beneficiary information contributed to the confusion that led to this interpleader action. Trustmark renews its request for discharge, dismissal, and attorneys' fees, contending that interpleader was proper at filing and that it acted as a disinterested stakeholder in depositing the policy proceeds with the Court.

## II    Legal Standard

Under the governing legal standard, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material for the purposes of summary judgment only if it 'might affect the outcome of the suit under the governing law.'" *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Ellis v. England*, 432 F.3d 1321, 1325–26 (11th Cir. 2005) (citation omitted). The party moving for summary judgment bears the burden of

establishing that there is insufficient evidence to support the non-moving party's case. *Id.* at 325. Moreover, "[t]he court must view all evidence in the light most favorable to the non-movant and must resolve all reasonable doubts about the facts in favor of the non-movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.*, 894 F.2d 1555, 1557–58 (11th Cir. 1990) (citation omitted).

III    Discussion

Federal Rule of Civil Procedure 22 permits a stakeholder exposed to multiple liability to bring all adverse claimants into a single action so a court can determine entitlement to the disputed funds**.** Fed. R. Civ. P. 22. The rule applies even if the competing claims arise from different sources or if the stakeholder denies liability to any claimant. *Id.*

Interpleader proceeds in two stages. At the first stage, the Court determines whether interpleader was proper at the time of filing and whether the stakeholder should be discharged. *See Ohio Nat'l Life Assur. Corp. v. Langkau ex rel. Est. of Langkau*, 353 F. App'x 244, 248 (11th Cir. 2009). Discharge is an equitable remedy, and results in a benefit to the stakeholder in that discharge releases the stakeholder from further liability in the action. *See Sevelitte v. Guardian Life Ins. Co. of Am.,* 55 F.4th 71, 79 (1st Cir. 2022). Courts may deny discharge where the stakeholder is not free from blame in creating or contributing to the controversy. *See Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 263–64 (3d Cir. 2009). At the second stage, the Court determines the rights of the claimants to the funds, and when all but one claimant withdraw or default, the remaining claimant is entitled to the proceeds. *See Langkau ex rel. Est. of Langkau*, 353 F. App'x at 248.

Attorney's fees in interpleader actions follow a distinct framework. Courts often award fees to innocent stakeholders who unwittingly come into possession of a disputed asset, but the Eleventh Circuit has made clear that insurers do not fall into that category because interpleader is

4

a foreseeable cost of doing business. *In re Mandalay Shores Coop. Hous. Ass'n Inc.*, 21 F.3d 380, 383 (11th Cir. 1994). Fee-shifting against a stakeholder is appropriate only in limited circumstances, such as where the stakeholder's conduct was improvident, vexatious, or otherwise improper. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976).[1]

Under Florida law, insurance policies must be enforced in accordance with their plain language. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co*., 845 So. 2d 161, 165 (Fla. 2003). A beneficiary under a life insurance policy may be changed only by strict compliance with the conditions set forth in the policy. *Warren v. Prudential Ins. Co. of Am.,* 189 So. 412, 413 (1939).

Beginning with the second stage interpleader question – determination of the rights of the claimants to the funds – the material facts are undisputed: Trustmark received and recorded the Marc-only beneficiary form during Cory's lifetime. The second form was not received until after Cory's death and therefore could not effect a change in beneficiary. Sandra Gorman predeceased Cory, and the policy provides that a predeceased beneficiary's interest passes to surviving beneficiaries. Brett has withdrawn any claim to the proceeds and Trustmark has agreed to pay the full proceeds into the court registry. Trustmark states that it is a "disinterested stakeholder in the midst of this interpleader" and therefore will not remit payment direct to Marc. (DE 76 at 2). Based on this record, I find, as a matter of law, that Marc Komorsky is the sole lawful beneficiary of both policies and summary judgment is granted in his favor.

Turning to Trustmark's renewed motion for discharge, I previously found interpleader appropriate and permitted Trustmark to deposit the life insurance proceeds into the registry but denied discharge as premature because Trustmark had not yet resolved its obligations under the

---

[1] Fifth Circuit precedent handed down prior to September 30, 1981 is binding in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

critical illness policy. (DE 57). Trustmark has now agreed to deposit those funds as well. (DE 64). Although a court may discharge a stakeholder even when no competing claims remain, discharge is an equitable remedy available only when interpleader was proper at filing and the stakeholder is free from blame. Here, interpleader was proper at the time of filing: Trustmark received a facially conflicting beneficiary form after Cory's death and was told by Brett's counsel that the forms "could result in litigation." These circumstances reasonably suggested potential multiple liability.

However, the record also reflects that Trustmark's own conduct contributed to the confusion that led to this interpleader action. Trustmark disclosed Marc's beneficiary status to Brett's counsel before Cory's death, contrary to its normal practice of not revealing beneficiary designations. Trustmark also mishandled the second beneficiary form, routing it to the legal department rather than the claims department, and the form was not part of the claim file until the legal department later brought it to the claims team's attention. Trustmark's concerns about paying Marc arose only after receiving this second form post-death—an ineffective document that could not legally change the beneficiary—and after receiving a letter from Brett's counsel expressing "confusion" and the possibility of litigation. These circumstances reflect internal confusion rather than competing claims, and they weigh against equitable discharge. Accordingly, Trustmark's renewed request for discharge is denied.

Discharge and injunctive relief are related but distinct remedies in interpleader. Discharge releases the stakeholder from further participation in the action, while an injunction under 28 U.S.C. § 2361 protects a discharged stakeholder from being subjected to future litigation concerning the same proceeds. Because discharge is an equitable remedy available only when the stakeholder is free from blame—and Trustmark's own conduct contributed to the confusion that precipitated this interpleader—injunctive relief is likewise inappropriate. *See* 28 U.S.C.A. § 2361

(in interpleader actions, a district court "*may* discharge the plaintiff from further liability, make the injunction permanent and make all appropriate orders to enforce its judgment") (emphasis added).

Finally, both Parties seek fees. Under *Mandalay Shores supra*, insurers generally are not entitled to fees in interpleader actions because interpleader is a foreseeable cost of doing business. Trustmark's request for fees is therefore denied. Although Trustmark contends it acted as a disinterested stakeholder, the record reflects that its own internal handling of beneficiary information contributed to the confusion that led to this interpleader action. This conduct does not rise to improvident or vexatious behavior, but it does defeat any claim that Trustmark is entitled to fees.

Marc also seeks fees, arguing that Trustmark's conduct rendered the interpleader improvident or vexatious under *Murphy supra*. But the undisputed record does not establish improvident or vexatious conduct. Trustmark received and processed the valid beneficiary designation during the insured's lifetime, did not mishandle the claim itself, and filed interpleader only after receiving a second form post-death that reasonably raised questions. The record reflects confusion rather than misconduct.

Marc's reliance on *John Hancock Mutual Life Insurance Co. v. Beardslee*, 216 F.2d 457 (7th Cir. 1954) is misplaced. In *Beardslee*, the insurer filed interpleader even though the supposed competing claimant had no actual or potential claim to the policy proceeds, and the insurer's own misinformation created the only possible dispute. By contrast, Trustmark faced a facially conflicting form and a threatened dispute, and interpleader was proper at the time of filing. Trustmark did not create the underlying beneficiary conflict, and its filing was reasonable. For

these same reasons, fees under my inherent authority are not warranted. Both fee requests are denied.

## **CONCLUSION**

In sum, interpleader was proper at the time Trustmark filed this action, but neither discharge nor injunctive relief are warranted because Trustmark's own conduct contributed to the confusion that led to the filing. The undisputed facts establish that Marc is the sole lawful beneficiary of both policies, and he is entitled to the full proceeds. Although both Parties seek fees, the record reflects confusion rather than misconduct, and neither Trustmark nor Marc has shown a basis for fee-shifting under the governing interpleader principles. Accordingly, all requests for attorneys' fees are denied.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1) Defendant Marc Komorsky's Motion for Summary Judgment (DE 52) is **GRANTED** in part.  Marc Komrosky is entitled to the full proceeds of Cory Gorman's policies. Marc Komrosky is not entitled to attorney's fees.

2) Trustmark is **DIRECTED** to deposit the funds in the court registry, and inform the Court as to the exact principal amount they deposited into the court registry no later than August 13, 2026.

3) Plaintiff's Renewed Motion for Interpleader Plaintiff's Discharge, Dismissal, Injunction and Reasonable Attorney's Fees and Costs (DE 64) is **GRANTED IN PART and DENIED IN PART.** Trustmark is directed to deposit the funds from the critical illness policy in the court registry.  The requests for discharge, an injunction and attorney's fees are denied.

4) Because this case will not be proceeding to trial (DE 78), Defendant Marc Komorsky's Motion in Limine to Exclude Groman Form (DE 53) and Defendant Marc Komorsky's Motion in Limine to Exclude Norwitch (DE 54) are **DENIED AS MOOT**.

5) A final judgment consistent with this Order shall be entered separately.

**SIGNED** in Chambers at West Palm Beach, Florida, this 6th day of August, 2026.

Donald M. Middlebrooks
United States District Judge

Copies to: Counsel of Record